**Roy Thomas O'MALLEY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6858.**

United States Court of Appeals First Circuit.

June 6, 1967.

---

Robert H. Reiter, Washington, D. C., with whom Robert R. Afflick, West Warwick, R. I., was on brief, for appellant.

Alton W. Wiley, Special Asst. U. S. Atty., with whom Edward P. Gallogly, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Defendant, a Chief Petty Officer of the United States Navy, was indicted and convicted for "wilfully and knowingly convert[ing] to his own use a sum approximately $900 of the money and property of the United States which had come into * * * [his] possession * * * by virtue of his employment * * *." 18 U.S.C. § 641.[1]

The government's evidence showed that defendant was chief commissaryman in charge of the mess facilities at the Navy Construction Battalion Center, Davisville, Rhode Island. His duties included collecting the daily cash receipts from the mess cashiers and transmitting them to the Disbursing Officer. Ordinarily, naval personnel who did not have "chow passes" would pay cash for a meal and sign a "signature sheet" which served as the record of cash collected. Each cashier would turn over to the defendant the money he had received and the corresponding signature sheets, and would note the amount in his individual cash receipt book. On "special events", however—that is, when visiting groups such as the Junior Naval Cadets ate in the mess hall—the cash and accompanying signature sheets would be turned over to defendant in a separate envelope, and, at defendant's direction, the amount would not be entered in the cashier's book. The various cashiers all testified to specific instances of delivering cash from special events to the defendant in this way. An audit of the disbursing officer's records, based on adequate explanatory testimony, established that—

with one exception [2]—the special events money was never turned over to the disbursing officer.

This evidence amply supports a conclusion that the defendant received money belonging to the United States and deliberately retained it for his own use. Defendant's argument that it is insufficient amounts to an assertion that he cannot be convicted of embezzlement without eyewitness testimony that he physically pocketed the missing funds. Such a contention is wholly without merit.

The case of Shaw v. United States, 357 F.2d 949 (Ct.Cl.1966), relied on by defendant, furnishes no support for his position. In that case—a suit for back pay by a discharged Navy officer—the plaintiff had been convicted by court-martial of embezzlement solely on the basis of a discrepancy in his accounts despite a specific finding that he had not converted the money and had not been negligent or culpably inefficient in handling it. The United States resisted on the ground that the charge was "statutory embezzlement, which requires no proof of criminal intent". 357 F.2d at 955. Moreover, the burden had been placed on the plaintiff (i. e., the court-martial defendant) not only to show that he was not at fault, but also affirmatively to explain the discrepancy. Neither factor is even remotely present in this case. The only burden to explain imposed on the defendant here was that inherent in the natural implications of the government's evidence. That an inference of guilt can be buttressed on circumstantial evidence of this nature is clear. To hold otherwise would impose an

---

1. A second count laid the same charge under 18 U.S.C. § 654. Section 641 punishes embezzlement of government property by anyone; section 654, embezzlement of anyone's property by a government officer. But the reviser's note to section 654 indicates that all embezzlement of government property was intended to be covered by section 641, section 654 being limited to embezzlement of non-government property. The second count was properly dismissed at trial.

2. The exception was a check for $105.73 given by the Junior Naval Cadets when they ran out of cash at the end of a week's visit. From the fact that the check was transmitted properly while cash received under identical circumstances was not, the jury might validly have inferred that the discrepancy was not accidental.

unrealistic burden on the prosecution, which fairness to the defendant does not require. Cf. Morrison v. People of State of California, 291 U.S. 82, 88–89, 54 S.Ct. 281, 78 L.Ed. 664 (1934).

Defendant's argument that the indictment under section 641 fails to recite felonious intent as an element of the offense is equally without merit. The words "wilfully and knowingly" amply convey the necessary element of mens rea. Colella v. United States, 360 F.2d 792, 798 (1st Cir.), cert. denied, 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65 (1966). Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), relied on by defendant, held only that, because section 641 required proof of felonious intent, it was error for the trial court to exclude a defense of innocent mistake. The indictment in that case, like the one here, adequately charged the crime in the statutory terms. Here there was sufficient evidence for the jury to find criminal intent, and the trial court's instruction on the meaning of "wilfully and knowingly" [3] fully covered the point.

The defendant further contends that certain opinion testimony given by a government witness about the amount of money missing was improperly admitted hearsay. No objection was made to the testimony, on direct examination, that the audit of the witness revealed "approximately $970" of missing funds. On cross-examination the witness was able to show how he arrived at the precise figure of $986.91, basing his calculations not on estimates made during his investigation but on specific testimony of prior witnesses during trial. The court, in denying defendant's motion to strike, properly cautioned the jury that if it found the prior witnesses un-

worthy of belief, the testimony of the government witness should be rejected. There was no error in accepting the testimony in this manner. Cf. Siravo v. United States, 377 F.2d 469 (1st Cir., May 15, 1967).

The defendant also argues that evidence of certain other acts should not have been admitted. An FBI investigator testified that defendant admitted withdrawing $10 from cash together with a signature sheet covering the cash on two occasions, in order to purchase charcoal without going through the usual requisitioning procedure. There was no objection to this testimony, which in any event appears admissible to show availability and knowledge of the suspected method of concealing misappropriation.

Proper objection was made, however, to testimony that defendant on one occasion told a storeroom custodian to put some vinegar, which was to be transferred to another department, in his car. This language of the defendant, according to the witness, was: " * * * put it in the trunk of my automobile, my personal vehicle. I will take it to the warehouse." Defendant's counsel immediately moved to strike this answer and the court promptly responded: "It certainly is. It may be stricken. The jury will disregard it entirely. Let's confine ourselves to this case." Subsequently defendant's counsel moved for a mistrial and the court denied the motion. This happened on the third day of the trial, which required nine days and ended thirteen days later. The court included in its charge a direction that the jury disregard any answers stricken. There was no request for any additional charge and no objections were registered.

3. "I also instruct you that an act is done wilfully if it is done voluntarily and intentionally, with the specific intent to do something which the law forbids; that is to say, with a bad purpose either to disobey or disregard the law. And an act is done knowingly if it is done voluntarily and intentionally and not because of mistake or accident or other innocent reason."

Defendant now challenges the sufficiency of this instruction, but he failed to raise this challenge at trial, at the only appropriate time. Fed.R.Crim.P. 30.

After considering the case as a whole and the nature of the offending answer, our "conviction is sure that the error did not influence the jury, or had but very slight effect". Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

Finally, the court did not err in allowing the bill of particulars to be amended during trial so that the time of defendant's alleged conversion was alleged to be "between the *approximate* dates of August 22, 1965, to August 29, 1965, and the *approximate* dates of October 1, 1965, to October 12, 1965." (Emphasis added.) The court had earlier announced, in granting the defendant's motion for a bill of particulars, "I am disposed to grant the motion to the extent the Government will specify the approximate dates * * *." There was no surprise and no significant variance between the proof and the dates originally alleged. The action of the court was well within the discretion allowed by Fed.R.Crim.P. 7(f). Nor was there error in the court's permitting the government to reopen the redirect examination of one of the witnesses.

Affirmed.