UNITED STATES of America,
Appellee,

v.

John R. MOSELEY, Appellant.

No. 73-1903.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1974.

Decided Nov. 7, 1974.

Rehearing Denied Nov. 27, 1974.

Certiorari Denied March 24, 1975.

See 95 S.Ct. 1426.

James R. Howard, Little Rock, Ark., for appellant.

O. H. Storey, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before VOGEL, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

PER CURIAM.

John R. Moseley was convicted of embezzling government property in violation of 18 U.S.C. § 641. On appeal he challenges the sufficiency of the evidence to sustain the conviction. We affirm.

From August 1970 through September 1972 Moseley was employed as the Chief of Pharmacy Services at the Veterans Administration Hospital in Little Rock, Arkansas. The alleged embezzlements occurred during that time period and involved several narcotic drugs, including morphine sulfate, Dilaudid and codeine phosphate. The defendant pled not guilty and the matter was tried to the court, the Honorable J. Smith Henley presiding, on partially stipulated facts. The stipulated facts were:

(1) The defendant was Chief of Pharmacy Services at the Little Rock Veterans Administration Hospital during the time period in question;

(2) The pharmacy records had been inventoried subsequent to his departure from that position at

which time they indicated the following drugs were missing and unaccounted for:

(a) 10,825 tablets of Dilaudid (.002 grams);

(b) 10,080 tablets of Dilaudid (.004 grams);

(c) 500 tablets of morphine sulfate (⅙ grain); and

(d) 1,051 tablets of morphine sulfate (.010 grams);

(3) Several irregularities were present in the VA records; and

(4) The defendant had signed nine receiving forms.

At trial the government produced several pharmacy employees who testified to the defendant's access to the drugs in question and to their approximate value. At least one witness testified that he had seen the defendant take drugs from the shelf and place them in a paper sack. There was evidence concerning the relative infrequency with which these drugs were used because of their narcotic nature. The government also called Albert Morgan, who testified to purchasing large quantities of Dilaudid from the defendant, and H. L. Walters, an undercover policeman who testified to a purchase of an amphetamine drug (apparently not one of those allegedly taken by the defendant) from the defendant. The defendant's case consisted of cross-examination intended to demonstrate the poor record-keeping practices at the VA hospitals, the accessibility of the drug safe to others and the practice of destroying certain drugs at certain intervals. He also called a member of the VA staff who testified on these same general topics.

The defendant's basic argument is that he had a right as Chief of Pharmacy Services to possess and control these drugs and therefore the government must also prove that he sold the drugs to establish a violation of § 641. He argues that the government failed to prove a sale of government property

since that fact may only be inferred after first inferring his wrongful conversion of the drugs. We disagree. This argument conveniently misconstrues the statute as well as the evidence before us.

■ The indictment charged in the language of the statute that the defendant "willfully and knowingly did embezzle and convert to his own use" certain specified government property in violation of 18 U.S.C. § 641. The defendant's challenge is mistakenly based upon a belief that the government was required to demonstrate a sale to prove embezzlement and conversion. This is not the case. See Morissette v. United States, 342 U.S. 246, 271–272, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

In Hawkins v. United States, 458 F.2d 1153 (5th Cir. 1972), the court relied upon Morissette in observing that the crime of conversion contained in § 641 did not require a sale. It said:

It is clear that conversion does not require a sale, inasmuch as the gist of the offense of conversion is wrongfully depriving an owner of his property whether or not it is sold. Morissette v. United States, 342 U.S. 246, 72 S. Ct. 240, 96 L.Ed. 288 (1952). Having once been converted however, the property is then subject to an entirely separate offense when it is sold, requiring a separate order of proof from that required in conversion. Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927); Thomas v. United States, 249 F.2d 429 (9th Cir. 1957). Therefore, as a matter of law, the offense of conversion and the offense of sale can be two separate and distinct offenses under 18 U.S.C. § 641.

Id. 458 F.2d at 1155.

■■ Similarly, the crime of embezzlement requires only proof of the wrongful taking. There was sufficient evidence of this culpable fact. Where, as here, there is a substantial shortage in property committed to the possession of the defendant, and in fact acquired in

the first instance at his request, and no plausible explanation of the shortage is tendered by the defendant, the trier of fact may reasonably infer from the circumstances that the custodian of the property has embezzled or converted it. *See* United States v. Powell, 413 F.2d 1037 (4th Cir. 1969); O'Malley v. United States, 378 F.2d 401 (1st Cir.), cert. denied, 389 U.S. 1008, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967).

■ However, assuming that evidence of a sale was essential to the government's case, the proof of this fact rests upon evidence independent of the wrongful taking. Morgan's testimony established a direct sale of a large quantity of Dilaudid. The court could infer from this testimony, along with all the other facts and attendant circumstances, that Moseley was wrongfully converting the drugs through unauthorized sales.

Judgment affirmed.