In the Matter of David M. COOK, d/b/a Diversified Gem Sales, and Donna W. Cook, Debtors.

**Udi SANDALON, Plaintiff,**

v.

**David M. COOK, d/b/a Diversified Gem Sales, and Donna W. Cook, Defendants.**

**Bankruptcy No. 91–52066.
Adv. No. 91–5098.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

June 12, 1992.

Mary M. Katz, Macon, Ga., for plaintiff.

Kirby R. Moore, Macon, Ga., for defendants.

J. Coleman Tidwell, Macon, Ga., Chapter 7 Trustee.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Udi Sandalon, Plaintiff, filed a "Complaint to Determine Dischargeability of Debt" on August 9, 1991. David M. Cook, d/b/a Diversified Gem Sales, and Donna W. Cook, Debtors, Defendants, filed their answer on September 9, 1991. A trial was held on April 6, 1992. At the conclusion of the trial, the Court granted a motion for involuntary dismissal made by counsel for Mrs. Cook. The Court entered an order on April 6, 1992, dismissing the complaint as to Mrs. Cook. The Court will hereafter refer to Mr. Cook as Defendant. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

### FINDINGS OF FACT

Plaintiff has been in the diamond business for a number of years. His office is in Atlanta, Georgia. Plaintiff imports diamonds and sends them on consignment to diamond brokers. A consignment memorandum accompanies the diamonds. The memorandum describes the diamonds and states the "asking" price. The final price is sometimes negotiated between Plaintiff and the broker. Plaintiff testified that a sale occurs when he and the broker agree on the price, payment terms, and other factors.

The broker shows the diamonds to a jeweler or retailer who, in turn, sells the diamonds to the ultimate customer. The broker sells the diamonds for the asking price or for the negotiated price, plus a "markup" for the broker's profit. Plaintiff invoices the broker after a diamond is sold. The broker then pays Plaintiff the invoice price under the agreed upon payment terms. If the broker does not sell the diamonds within a few weeks, they are returned to Plaintiff.

Defendant was a diamond broker and the owner of Diversified Gem Sales. His office was in Macon, Georgia. Plaintiff had known Defendant for a number of years.

Plaintiff and Defendant began a business relationship in January of 1991. Plaintiff sent a number of small diamonds on consignment. Defendant paid for these diamonds, and these transactions are not in issue.

A jeweler in Macon told Defendant that a customer was looking for a diamond. Defendant told Plaintiff that he had a customer for a large diamond. Plaintiff sent two diamonds on consignment on February 28, 1991. One diamond weighed 5.73 karats. Plaintiff's asking price was $41,256. The second diamond weighted 7.19 karats. Plaintiff's asking price was $38,826. A consignment memorandum accompanied the diamonds, which stated:

> The merchandise described herein is delivered to you on CONSIGNMENT only, at your own risk of loss or damage from all hazards, whether by theft, robbery, fire or otherwise. Title to said merchandise is and shall remain in Udi Sandalon, and is held by the consignee subject to our order, the delivery thereof being for the purposes of inspection only, and is to be returned to us on demand. It is understood and agreed by the consignee that nothing contained in this memorandum shall be construed to be, or has there otherwise been an extension of credit to the consignee. The consignee has no right to transfer the said merchandise to any other person, firm or corporation, whether on memorandum or otherwise, without WRITTEN permission of UDI SANDALON. A sale of this merchandise can only be effected and title will pass only if, as, and when UDI SANDALON, the said owner shall agree to such sale and bill of sale rendered thereof. All the above is binding on us, regardless of prior transaction.

Defendant signed the consignment memorandum. Defendant gave the diamonds to the jeweler. The customer rejected the 5.73–karat diamond, and Defendant returned it to Plaintiff. This diamond is not in issue. The customer wanted the jeweler to create a ring using the 7.19–karat diamond (hereafter "the diamond"). The customer paid Defendant $40,000 in March 1991. The customer paid Defendant the balance due Defendant of $2,500 about two weeks later.

Defendant was having financial problems. A diamond supplier from New York was demanding to be paid. Defendant used $20,000 from the diamond sale to pay the New York supplier. Defendant sent Plaintiff a check for $10,000 in April 1991. A notation on the check stated it was a "Deposit." Plaintiff testified that Defendant told him the $10,000 came from Defendant's personal funds rather than payment from the customer. Defendant used the remainder of the proceeds to pay other debts.

Plaintiff deposited the $10,000 check into his bank account. Plaintiff does not have an escrow account. Thus, those funds were commingled with Plaintiff's other funds. Plaintiff testified that he did not give Defendant any credit towards the purchase price of the diamond. Plaintiff testified that Defendant did not call before sending the $10,000 check. Plaintiff did not consider the check to be payment on the diamond or an extension of credit.

Plaintiff frequently telephoned Defendant, asking about the diamond. In March or April of 1991, Defendant told Plaintiff that he had a customer who would pay for the diamond when her certificate of deposit matured. Defendant continued to tell Plaintiff this even after he was paid for the diamond. Defendant admits that he lied to Plaintiff.

Defendant and Mrs. Cook went to Plaintiff's office on June 6, 1991. Plaintiff demanded the return of the diamond. Plaintiff testified that Defendant told him the diamond had not been sold and was at a jeweler in Macon. Plaintiff called the jeweler, who stated that he was making a ring for a customer. Plaintiff told the jeweler that he wanted either the diamond or payment. The jeweler stated that he would get back with Plaintiff in a few days. Defendant testified that he told Plaintiff the diamond had been sold and paid for. Defendant testified that Plaintiff wanted the jeweler to return the diamond and let Defendant and the customer "fight it out."

Defendant testified that he did not tell Plaintiff that he had received more than $10,000 until the meeting on June 6, 1991. It is clear that Defendant did not tell Plaintiff that the diamond had been sold prior to this meeting. Defendant testified that he attempted to get money from his family to pay Plaintiff.

Plaintiff never sent an invoice to Defendant on the diamond in question. After the meeting on June 6, 1991, Plaintiff called an attorney in Macon to help him collect the debt. Defendant and Mrs. Cook filed their bankruptcy petition under Chapter 7 of the Bankruptcy Code on June 12, 1991. Plaintiff filed a proof of claim in the amount of $30,991.75. Plaintiff asserts an unsecured claim in the amount of $30,583. This represents the unpaid balance for the diamond. The basis of this claim is "theft." The remainder of Plaintiff's claim is not in issue in this adversary proceeding.

Plaintiff testified that he and a broker usually talk about the asking price before a large diamond is sold. Defendant, however, could sell the diamond in question for the price stated on the consignment memorandum without receiving prior approval from Plaintiff. Defendant testified that he knew he could not sell the diamond on an installment basis without Plaintiff's approval.

Defendant requested credit from Plaintiff on at least one occasion. Plaintiff never extended credit, and Defendant never submitted a credit application. Plaintiff specifically never authorized Defendant to sell the diamond on an installment basis.

Plaintiff and Defendant continued their business relationship after the diamond in issue was sent on consignment. Defendant returned other diamonds worth about $60,-000 and made several payments to Plaintiff after February 28, 1991.

## CONCLUSIONS OF LAW

Plaintiff contends that Defendant embezzled the diamond and that the debt is non-

dischargeable. Plaintiff relies on section 523(a)(4) of the Bankruptcy Code,[1] which provides:

(a) A discharge under section 727, 1141[,] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C.A. § 523(a)(4) (West 1979 & Supp. 1992).

Plaintiff bears the burden of proving the nondischargeability of the debt by a preponderance of the evidence. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In *Farmers and Merchants Bank of Eatonton, Georgia v. Brinsfield (In re Brinsfield),*[2] this Court stated:

An act of embezzlement will render a debt nondischargeable regardless of whether Defendant was acting in a fiduciary capacity. Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." 3 *Collier on Bankruptcy,* ¶ 523.14[3] (15th ed. 1987). *See [Gay v. Holland] (In re Holland)* [78 B.R. 358] at 363 [ (Bankr.M.D.Ga. 1987) ]; *[Mullis v. Walker] (In re Walker),* 7 B.R. [563] at 564–65, 7 Bankr.Ct. Dec. [68] at 69 [ (Bankr.M.D.Ga.1980) ].

Under the law of Georgia, a plaintiff seeking to prove embezzlement must establish that the property was converted to the defendant's own use.

78 B.R. at 369.

This Court continued, stating:

Before Defendant's debt can be found nondischargeable for embezzlement, Plaintiff also must establish that Defendant acted with fraudulent intent. *In re Walker,* 7 B.R. at 565, 7 Bankr.Ct.Dec. at 69 (citing *Moore v. United States,* 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422

---

**1.** 11 U.S.C.A. § 523(a)(4) (West 1979 & Supp. 1992).

**2.** 78 B.R. 364 (Bankr.M.D.Ga.1987); *see also Colonial–Interstate, Inc. v. Ayers (In re Ayers),* 83 B.R. 83, 88 (Bankr.M.D.Ga.1988).

(1895)). An intent to defraud is defined as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." *Black's Law Dictionary* 381 (5th ed.1979).

78 B.R. at 370.

Under Georgia law, theft by conversion is the equivalent of embezzlement. Georgia Code section 16–8–4(a)[3] provides:

(a) A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another including, but not limited to, leased or rented personal property, under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own.

O.C.G.A. § 16–8–4(a) (1988).

In *Baker v. State*,[4] the Georgia Court of Appeals stated:

As held by this court in *Baker v. State*, 131 Ga.App. 48, 205 S.E.2d 79 (1974), the terms of the agreement between the parties are decisive in determining whether the defendant has converted funds of another from a directed purpose to his own use.

. . . .

... It is the presence of a fraudulent intent "... that distinguishes theft by conversion from a simple breach of con-

tract." *Jackson v. State*, 137 Ga.App. 192, 223 S.E.2d 239 (1976).

238 S.E.2d at 243.

■ Defendant contends that the proceeds from the sale of the diamond were used to pay business debts rather than for "his own personal use." *See Rai Credit Corp. v. Patton (In re Patton)*, 129 B.R. 113, 116 (Bankr.W.D.Texas 1991) (corporate shareholder, president, and CEO not chargeable with embezzlement under section 523(a)(4) unless corporate veil pierced or unless the money in question was taken for the individual debtor's use rather than for benefit of the corporation). The evidence does not show that Diversified Gem Sales was a corporation. The consignment memorandum was signed "David Cook." The Court is persuaded that Defendant used the proceeds for his own personal use.

In its research, the Court found several cases with facts similar to the case at bar.

In *Crebbs v. Epperson (In re Epperson)*,[5] the creditor sent the debtor firearms on consignment. The debtor could sell a firearm for cash, trade it for another firearm, or make any other disposition as long as the agreed upon price was sent to the creditor. The creditor knew that the proceeds were going into the debtor's operating account. The debtor sold several firearms. His check to the creditor was returned unpaid due to insufficient funds. The debtor filed a bankruptcy petition, and the creditor contended that the debtor had embezzled his property. The court stated:

Clearly, the facts in this case do not support a finding of embezzlement. It is not disputed that the defendant had unfettered discretion to sell the firearms for cash, goods, services or any combination thereof. Thus, the sale of the firearms created nothing more than a debt. Nor was there a fiduciary relationship as to the resulting funds.

45 B.R. at 711.

In *Snap–On Tools Corp. v. Rigsby (In re Rigsby)*,[6] the debtor was a consignment

---

3. O.C.G.A. § 16–8–4(a) (1988).

4. 143 Ga.App. 302, 238 S.E.2d 241, 243 (1977).

5. 45 B.R. 708 (Bankr.E.D.Tenn.1985).

6. 18 B.R. 518 (Bankr.E.D.Va.1982).

dealer for tools. Under the agreement, the tools remained the property of the creditor. The debtor could sell the tools for cash or on installment payments. The proceeds, less the debtor's commission, were property of the creditor. The debtor sold certain tools but failed to pay the creditor some of the proceeds. The court stated:

> Although the written agreement between [the creditor and the debtor] provided that the property and the sale proceeds remain the property of [the creditor], the actions of the parties refute such a provision. [The creditor] allowed [the debtor] to create the accounts receivable from his customers. He was not required to isolate these funds in a trust account. He had unrestricted use of these funds in his possession. *In re Williams*, 7 B.C.D. 45 (W.D.Va.1980) is a case in point. The [creditor's] assignor entered into a commission agreement with the [debtor] for the [debtor] to sell gasoline from the [creditor's] pumps on the [debtor's] property. [The creditor] retained title in the gasoline until it was sold by the [debtor] who was to remit the total gasoline sales proceeds, less commission, by making daily deposits in a local bank and weekly reports by mail. The [debtor] defaulted. The default was made good by agreement. The [debtor] again defaulted in remitting the net gasoline sales receipts in the amount of $2,192.42. The [creditor] padlocked the pumps. The court found that only the money collected from the gas sold after the [debtor] broke the padlocks was a debt nondischargeable in bankruptcy, stating that no fiduciary relationship existed between the parties and that "[t]he default by failure of [the debtor] to remit sales proceeds ... is an open account in debt and not an obligation for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny within the meaning of ... 11 U.S.C. § 523(a)(4)." *Williams* at 47. *See also In re Wise*, 6 B.R. 867 (Bkrtcy. M.D.Fla.1980); *In re Wooldridge*, No. BK–75–1213–R (Bkrtcy.E.D.Va., filed Aug. 11, 1976), *rev'd* No. 760429–A–R (E.D.Va., filed Nov. 5, 1976). In *Wooldridge*, the District Court in reversing a decision of this Court held that the [debtor's] unfettered use of funds abrogated the parties' trust agreement.

> This Court does not believe the [creditor] has [proffered] clear and convincing evidence to establish that [the debtor] embezzled the funds obtained in the Bradley transaction. [The creditor] is simply an unpaid creditor of [the debtor].

18 B.R. at 521.

In *Kopelman & Shatz, Inc. v. Mastrangelo (In re Mastrangelo),*[7] the creditor, a wholesale diamond dealer, gave the debtor, a jeweler, two diamonds on "memorandum agreement." The debtor sent the creditor a letter stating that the diamonds had been given to a customer and asked for a bill. The diamonds, however, had not been given to a customer and were never found. The creditor contended that the debtor had embezzled the diamonds. The court stated:

> An embezzlement may be defined as (1) the fraudulent (2) conversion of (3) the property (4) of another (5) by one who is already in lawful possession. LaFave & Scott, *supra*, § 89 at 644. In order to find an embezzlement, the Court must find that a fraudulent conversion of the property took place. Conversion requires a serious act of interference with the owner's rights. *Id.* Although it may have been that [the debtor] intended to show the diamonds to a customer, found by one of his employees, when he took them on memo on June 18th, it is clear from the testimony that he never showed the diamonds to any customer. Yet, by letter dated June 25, he informs [the creditor] that "the diamonds on memo # 86928 had been taken by our customer." Once he sends that letter and makes the earlier telephone call to the same effect, it is clear that [the debtor] had no intention of returning the diamonds to [the creditor]. Although he requests a bill, the debtor lied in the letter, for the diamonds had not been taken by any customer. The debtor asserts there was no fraudulent intent in-

7. 34 B.R. 399 (Bankr.D.Mass.1983).

volved because he had lined up a customer with his friend in New Jersey. I do not find this excuse credible. At the time he is dealing with this very close friend, and in desperate financial condition, there is no request for any payment for the stones though [the debtor's business] has been forced to close because it cannot make payroll and the Massachusetts Department of Revenue has levied on the business. I find that no sale had been made to the friend in New Jersey, or anyone else. Intent is a state of mind which may be interpreted by the conduct of the person implicated. *In re Moran*, 456 F.2d 1030, 1031 (3rd Cir.1972). An unconfirmed story about the possibility of a sale does not negate the inference to be drawn from the other actions of the debtor. The debtor had possession of the diamonds and lied when he wrote to [the creditor]. He also felt no compunction about giving an unpaid for diamond to his business associate. He has not satisfactorily explained the disappearance of the diamonds. No evidence was presented that any other items were missing from the [debtor's] safe after the seizure by [another creditor]. The Court can only conclude under these facts that [the debtor] converted the diamonds to his own use and that a common law embezzlement did occur. Therefore, the debt is nondischargeable under 11 U.S.C. § 523(a)(4).

34 B.R. at 402.

In *National Bank of Commerce of Pine Bluff v. Hoffman (In re Hoffman)*,[8] the debtor sold equipment and crops encumbered by liens of the creditor. The debtor was in financial trouble and did not remit all of the proceeds to the creditor. The proceeds were used to operate the business and pay other business debts. The debtor hoped the business would survive and that the creditor would be paid. The creditor contended that the debtor had embezzled the proceeds. The court stated:

[The debtor's] use of the proceeds for business debts and continued farm operations is no defense to proof of embezzle-

ment under 11 U.S.C. § 523(a)(4). By taking possession and using the proceeds of [the creditor's] collateral, [the debtor] exercised the requisite "dominion over the property in violation of the rights of the owner entitled to possession" to constitute conversion of the proceeds. *Auston v. Loyd*, 533 F.Supp. 737, 740 (W.D.Ark.1982), *aff'd*, 691 F.2d 503 (8th Cir.1982) quoting *Thomas v. Westbrook*, 206 Ark. 841, 177 S.W.2d 931 (1944). The offense of embezzlement requires only proof of a wrongful taking and deprivation from the rightful owner. *United States v. Moseley*, 507 F.2d 257 (8th Cir.1974), *reh'g denied*, 507 F.2d 257 (8th Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1426, 43 L.Ed.2d 672 (1975); *Hawkins v. United States*, 458 F.2d 1153, 1155 (5th Cir.1972) (wrongfully depriving owner of his property whether or not it is sold constitutes the offense of conversion).

Third, if [the debtor's] intent was to repay [the creditor] from future profits from the continued operation of the farm it is no defense to the offense of embezzlement. *Camp v. State*, 249 Ark. 1075, 467 S.W.2d 707, 710 (1971), *rev'd on other grounds*, 404 U.S. 69, 92 S.Ct. 307, 30 L.Ed.2d 223 (1971). [The creditor] had a property right in the exact dollars [the debtor] received from the sale of the mortgaged property and was not obliged to be paid from any other source. "The fact that the intent is to deprive the rightful owner of funds only temporarily and not permanently, as is often the situation in cases such as [*In re* ] *Drake* [5 B.R. 149 (Bkrtcy.D.Idaho 1980) ] and the present action, does not eliminate the element of intent. For example, in the context of criminal embezzlement, the intention to restore the property is neither a defense to nor negation of the embezzlement. The embezzlement has occurred and the intent to later restore may only be considered in mitigation of punishment. I conclude the same analysis applies in the civil context." *Matter*

---

**8.** 70 B.R. 155 (Bankr.W.D.Ark.1986).

*of Shuler*, 21 B.R. [643] at 644 [ (Bankr.D.Idaho 1982) ].

70 B.R. at 163–64.

In *Applegate v. Shuler (In re Shuler)*,[9] the debtor sold goods that he had received on consignment. Because of his precarious financial situation,[10] the debtor put the proceeds in his general account instead of paying the creditor. The proceeds were used to operate the debtor's business. The creditor contended that the debtor had embezzled the proceeds. The court stated:

[A]n embezzlement occurs when a person fraudulently appropriates property of another which has been entrusted to him. Fraudulent appropriation requires intent to deprive and this element is, necessarily, to be derived from the conduct of the person accused of the embezzlement.

While such intent is a question of fact, when proceeds of sale are received by a consignee who has, upon receipt, the affirmative duty to pay an agreed portion of those proceeds over to the consignor, and those funds are not paid, such intent to deprive is inferable unless the failure to pay was ·caused by circumstances or conditions beyond the control of the consignor. The fact that the intent is to deprive the rightful owner of the funds only temporarily and not permanently, as is often the situation in cases such as *Drake* and the present action, does not eliminate the element of intent. For example, in the context of criminal embezzlement, thè intention to restore the property is neither a defense to nor negation of the embezzlement. The embezzlement has occurred and the intent to later restore may only be considered in mitigation of punishment. I conclude the same analysis applies in the civil context.

The debt herein is therefore held nondischargeable under 11 U.S.C. § 523(a)(4).

21 B.R. at 644.

 It is undisputed that Defendant could sell the diamond for the asking price on the consignment memorandum without receiving prior approval from Plaintiff. Defendant sold the diamond for an amount greater than the asking price. The Court is persuaded that the selling of the diamond was not an embezzlement. Defendant, however, did not send the proceeds to Plaintiff. Defendant admits that he lied to Plaintiff about the diamond. Defendant knew that he was obligated to pay most of the sale proceeds to Plaintiff. A portion of the proceeds was paid to Plaintiff. The remainder was paid to other creditors. Thus, Defendant converted proceeds from the diamond's sale for his own use in violation of his agreement with Plaintiff.

The Court is persuaded that Defendant intended to defraud Plaintiff. Defendant knew that he was selling Plaintiff's property. Defendant was having financial problems and knew that he may not be able to pay Plaintiff. The Court is persuaded that Defendant committed an act of embezzlement against Plaintiff and that the debt is nondischargeable.

An order in accordance with this memorandum opinion will be entered this date.

---

9. 21 B.R. 643 (Bankr.D.Idaho 1982).

10. *Applegate v. Shuler (In re Shuler)*, 20 B.R. 163, 164 (Bankr.D.Idaho 1982).