STATE v. GUTHRIE.

Opinion delivered April 16, 1928.

1. EMBEZZLEMENT—CONVERSION OF CUSTOMER'S MONEY.—An instruction that an allegation that the officer of a corporation converted a customer's money to his own use would be sustained, if the testimony showed that such money was mingled with that of the corporation, under such officer's order or with his permission, *held* proper.

2. EMBEZZLEMENT—INSTRUCTION.—On a trial of an officer of a corporation on embezzlement of a customer's money mingled with that of the corporation, the court correctly charged the jury that the testimony must show that defendant knew that the corporation was insolvent and unable to pay such money out of its funds or assets.

3. EMBEZZLEMENT—WRONGFUL INTENT.—Wrongful intent to convert another's property, thereby depriving him of it permanently, is an essential ingredient of the crime of embezzlement.

Appeal from Sebastian Circuit Court, Fort Smith District; *J. Sam Wood,* Judge; affirmed.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellant.

SMITH, J. Appellee was tried and acquitted under an indictment charging him with the crime of embezzlement. Evidence offered to support the allegations of the indictment was to the following effect: Appellee was the president and managing officer of the John A. Guthrie Mortgage Company, a corporation engaged in the business of selling real estate mortgages, for which service a brokerage fee was charged. A note to the order of the corporation would be executed and secured by a mortgage on land owned by the maker of the note. The corporation would transfer the note and mortgage to the purchaser, and would account to the borrower for the proceeds of the sale, less the brokerage fee. Such a note and mortgage were executed to the corporation by James H. Ruth and wife, and the same were sold by the corporation for a sum which netted $990, less the brokerage fee. This money was not paid to Ruth, after demand. Upon receiving this money it was mingled

with other money belonging to the corporation, and this was done under the direction and with the permission of appellee as managing officer of the corporation, but without the knowledge or consent of Ruth.

The corporation was insolvent, and was unable to pay Ruth the sum of money which had been collected by the corporation for his account. The testimony was conflicting as to whether appellee was aware of the insolvency of the corporation, and there appears to be legally sufficient testimony to support a finding either way upon that question. Appellee testified that he considered the corporation solvent at the time the transaction with Ruth was had, as an audit of the corporation's affairs had shown the corporation to be solvent.

Over the objection of the State the court gave an instruction numbered 11-A, which reads as follows:

"You are instructed that, before you can convict the defendant of the charge of embezzlement in this case you must find that the defendant, John A. Guthrie, at the time the money of Ruth was intermingled with the funds of the Guthrie Mortgage Company, if you find it was so intermingled, had personal knowledge of that fact or took some part in the intermingling of said money with the funds of the Guthrie Mortgage Company, and, if you find that the money of Ruth was intermingled with the funds of the Guthrie Mortgage Company with the knowledge or by the direction or by permission of the defendant, you must further find, before you can convict him, that, at the time of such intermingling, the defendant, Guthrie, knew that the Guthrie Mortgage Company was insolvent, and unable to pay said money to Ruth out of its funds or assets."

It is insisted by the State that this instruction is erroneous and resulted in the acquittal of the accused, inasmuch as it imposed upon the State the burden of showing, not only that Ruth's funds were intermingled with those of the corporation with the knowledge or by the direction of appellee, but that appellee knew, when

this was done, that the corporation was insolvent and unable to pay said money to Ruth out of its funds or assets. As other indictments, based on similar transactions, are pending against appellee, in which the same instruction will probably be given, the State has perfected this appeal to have it determined, before other trials are had, whether the instruction is a correct declaration of the law. It is the insistence of the State that, if Ruth's money was converted to the use of the corporation by appellee or under his direction, without the knowledge or consent of Ruth, it is immaterial that appellee may not have known that the corporation was in fact insolvent when that transaction occurred.

The indictment charged appellee with having converted Ruth's money to his own use, and it may be first said that the instruction correctly charged the jury that this allegation would be sustained if the testimony showed that Ruth's money was mingled with that of the corporation under appellee's order or with his permission.

This subject is extensively discussed in the case of State of Washington v. Thomas, 123 Wash. 299, 212 Pac. 253, 33 A. L. R. 781, and in the annotator's note to that case. In that case the Supreme Court of Washington quoted with approval the following statement of the law from 14A C. J., page 244:

"Also—at least where the crime charged involves guilty knowledge or criminal intent—it is essential to the criminal liability of an officer or servant of a corporation that he actually and personally do the acts which constitute the offense, or that they be done by his direction or permission."

The Washington case also quotes approvingly at some length from the case of Milbrath v. State, 138 Wis. 354, 131 Am. St. Rep. 1012, 120 N. W. 252, in which case a corporation took over and converted assets previously held for a client by a partnership which the corporation succeeded. It was there said:

"The evidence is ample to support the contention that it was put in the corporation safe and mingled with the funds of the insolvent corporation and deposited in its bank account, with the consent and by the act of the defendant conjointly with Wagner. * * * There cannot be much doubt that this constituted a conversion of the money by the defendant and Wagner. But was the money converted to their own use? One may convert money of another to his own use by paying it out upon his private or personal debt. *Guenther* v. *State,* 137 Wis. 183, 118 N. W. 640. If this is true, he can convert the money to his own use by putting it into the treasury and mingling it with the funds of an insolvent corporation which is under his control and management, and of which he is a stockholder and officer in charge. The benefit he receives in the first case by discharge of his personal debt is equal to the whole amount of the money so paid. The benefit which he receives in the second case is not equal to the whole amount of the money so paid. But the extent to which defendant was benefited does not constitute the test. It is paid to his own use in either case. It is paid into that which is a mere instrumentality created by him under sanction of law, but as much under his control and as subservient to his will as the furniture of his office or the books of account in which he records his transactions. Under such circumstances there is no room for the legal fiction of separate corporate personality or for distinction between the defendant's acts as officer of the corporation and his acts as an independent natural person.' In that case the defendant was charged individually, as here."

The majority are also of the opinion that the court correctly charged the jury that it was essential that the testimony show and the jury find therefrom that appellee knew the corporation "was insolvent and unable to pay said money to Ruth out of its funds or assets," and that this is true because a wrongful intent to convert another's property, thereby depriving him

permanently of it, is an essential ingredient of the crime
of embezzlement. If appellee did not know, or was not
charged with knowledge of facts from which notice
would necessarily be imputed, that the corporation was
insolvent, there was no embezzlement of Ruth's money,
as that would be payable to and recoverable by him upon
proper demand of the corporation, and appellee must
have known that the necessary or probable consequences
of mingling Ruth's funds with those of the corporation
would be to deprive Ruth thereof before he would be
guilty of the crime of embezzlement, and if he did not
have this knowledge, or if it were not necessarily imputed
to him by the facts and circumstances shown in the tes-
timony, then he was not guilty of embezzlement, and
the instruction so correctly declared the law.

It is therefore the opinion of the majority—in which
Mr. Justice WOOD and the writer do not concur—that
the instruction was a correct declaration of the law
under the issues joined, and the judgment of the court
below is therefore affirmed.