B. Frank CAMP *v.* STATE of Arkansas

5541                                     467 S. W. 2d 707

Opinion delivered February 15, 1971

*Lee Ward* and *James A. Crislip*, Memphis, for appellant.

*Joe Purcell*, Attorney General, *Mike Wilson*, Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. B. Frank Camp appeals from an embezzlement conviction alleging the errors hereinafter discussed.

Mr. Camp was the assistant administrator of the Osceola Memorial Hospital from June 1968 to August 1, 1969. During that time he handled approximately $750,000 belonging to the hospital. It is stipulated that during that time Mr. Camp purchased items totalling $20,131.18 for his own use with hospital funds.

Clarence Johnson testified that he was employed to audit the hospital records. During a routine audit, he observed a number of discrepancies. One such item was check No. 2781 to Central Supply Co. for a harvest gold tub, gold-plated shower head, gold plated drain, gold Lady Fair lavatory, gold-plated fittings, harvest gold toilet, avocado green tub, chrome plated grab rails, drain, showerhead, fixtures with charcoal handles, avocado closet and seat, green lavatory and chrome plated fixtures with charcoal handles charged to the hospital's "Maintenance and Power Plant" account. When Mr. Camp was first questioned about these items, he told witness that they had been acquired by the hospital for the "V. I. P." room. It is now stipulated that they were acquired for Camp's own use.

The purchases in the stipulation were charged to some thirty different accounts on the hospital records.

Johnson, in addition to the stipulated items, outlined an additional $5,394.18 received by Camp for which he had not accounted. Some of the latter consisted of checks from the Coca Cola, Pepsi-Cola and Dr. Pepper bottlers endorsed by Camp.

Mr. John Cherry, the hospital administrator, testified that he employed Camp at a starting salary of $10,000 per year. Cherry said that neither Camp nor any other employee had authority to purchase groceries through the hospital. Neither had Camp discussed furnishing materials or anything through the hospital for construction of Camp's home. Cherry knew that in the past certain things were purchased by individuals and charged to the hospital, such as tires and a freezer but in those instances the items were shown as being charged and owed to the hospital by the individual involved. Mr. Cherry said there is a world of difference between $20,000 and a set of tires. When Camp met with the hospital board on July 31, 1969, Cherry recalled that Camp then only admitted some $17,000 worth of items had been purchased for his own use.

Some of the hospital board members were called to show that no permission had been given to Camp to make the purchases on the hospital's account. One was Mr. Harold Ohlendorf, who stated that the problem of employees' purchases through the hospital was administrative and that the administrator had authority to grant such permission. However, Mr. Ohlendorf know of no such permission given to Mr. Camp. In fact Mr. Ohlendorf says that he asked Camp, "Frank, why did you do this?" and that Camp replied, "I don't know. I don't have any excuse. I made a mistake." Admittedly Mr. Ohlendorf needed a hospital bed for his mother that he acquired through the hospital and for which he paid promptly.

Needless to say, the evidence is more than sufficient to sustain the conviction.

The trial court properly overruled the motion to

strike the indictment. The motion was made on the premise that appellant was allowed to appear before the grand jury and testify without being told that anything he said could be used against him. The argument is apparently based upon *Miranda* v. *Arizona,* 384 U. S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974 (1966). *Miranda* has no application here because Camp voluntarily appeared before the grand jury at the request of his counsel of record.

The trial court required the State and appellant to voir dire a prospective juror before the State was required to peremptorily challenge him. In this the trial court did not err. See Ark. Stat. Ann. § 43-1903 (Repl. 1964) and *Lackey* v. *State,* 67 Ark. 416, 55 S. W. 213 (1900).

We are unable to say from the record that the trial court erred in refusing appellant's challenge for cause to prospective jurors Culbert D. Gwaltney and William E. Ward. All the record shows is appellant's objection as dictated into the record and the trial court's refutation of appellant's alleged bias of the jurors. Upon the record before us, it is impossible to say that the trial court committed error.

On cross-examination of Johnson, the CPA, appellant developed that Johnson was paid $14,700 in fees for work done in 1968 and 1969. Appellant now complains that the trial court should have permitted him to show the number of hours that Johnson worked to earn that sum. The matter sought to be inquired of was certainly immaterial to the issues before the court and under the circumstances we find no prejudicial error or abuse of discretion.

Appellant during the trial asked the court to strike some remarks of the prosecution. The court then told the jury to "completely disregard statements of counsel . . . and of a personal nature as having no value. . . ." At that time counsel made no further objections or exceptions. He cannot now be heard to complain.

The trial court properly instructed the jury that it could convict appellant for any act of embezzlement committed within three years prior to the filing of the information. Appellant now complains that evidence was introduced showing that appellant had unlawfully used some credit cards after the date in the indictment. Appellant permitted the evidence to be introduced without objection or cautionary instruction. Under those circumstances, he is not in a position to now complain of error.

Appellant also complains, relying upon *State* v. *Guthrie,* 176 Ark. 1041, 5 S. W. 2d 306 (1928), that the trial court should have given his requested instruction No. 1 as follows:

"You are further instructed that before you may find that funds were fraudulently converted to his own use by the defendant you must first find beyond a reasonable doubt that (1) the defendant had no permission, either express or implied, from his superior or employer to use such funds for his own benefit, and (2) also that, at the time of using such funds for his own benefit, the defendant had an intention permanently to deprive his employer of such funds."

*State* v. *Guthrie,* relied upon by appellant, involves that embezzlement that arises through the co-mingling of another's funds with those of an insolvent corporation and is not authority for that embezzlement that arises when public funds are converted to the use of the person charged. See *Russell* v. *State,* 112 Ark. 282, 166 S. W. 540 (1914). In this connection the court properly told the jury by its instruction No. 7 that an intent to repay is not a defense to a charge of embezzlement.

Appellant complains that the trial court did not properly admonish the jury when the prosecuting attorney argued to the jury about appellant's news releases to the newspapers about his trying to repay the money. The trial court told the jury that arguments of

counsel were not evidence and should not be considered by them as such. We hold this was sufficient under the record.

Appellant also complains of certain arguments made by the prosecuting attorney in his jury summation and of the trial court's failure after the arguments to instruct the jury that a plea of not guilty constitutes a contradiction of every fact introduced by the State. Appellant did not object to the instructions given before the arguments commenced nor to the matter of which he now complains while the argument was being made. Thus he is not now in a position to complain that the trial court erred. *Parrott* v. *State*, 246 Ark. 672, 439 S. W. 2d 924; *Stockton* v. *State*, 239 Ark. 228, 388 S. W. 2d 382 (1965).

Affirmed.

FOGLEMAN, J., not participating.