In re Otis E. SNELLGROVE, Kristine H. Snellgrove, Debtors.

**LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff,**

v.

Otis E. SNELLGROVE and Kristine H. Snellgrove, his wife, Defendants.

Bankruptcy No. 81–00916–BKC–TCB.

Adv. No. 81–0472–BKC–TCB–A.

United States Bankruptcy Court, S. D. Florida.

Oct. 30, 1981.

Phillips & Phillips, Miami, Fla., for defendants/debtors.

James A. Walker, Miami, Fla., for plaintiff.

## MEMORANDUM DECISION (DISCHARGEABILITY)

THOMAS C. BRITTON, Bankruptcy Judge.

Plaintiff seeks a determination of nondischargeability under 11 U.S.C. § 523(a)(4).

(C.P. No. 1). The debtors have answered. (C.P. No. 14). The matter was tried on October 22.

The debtors were, respectively, the president and the secretary-treasurer of a corporation which served as the general contractor on three public construction jobs in this area between June 30, 1978 and May 31, 1979. The three jobs were done for different governmental entities on different properties. The debtors obtained performance and payment bonds from the plaintiff for each job and executed personal indemnity agreements in favor of the surety.

The first payment on any of the three jobs was received by the debtors on June 30, 1978. Eleven months later, on May 31, 1979, the debtors surrendered the three jobs to the surety for completion. During that interval, the debtors received a total of $164,000 more in draws upon two of three jobs (Naranja and Skyhook) than was spent in connection with these jobs. On the third job (Jollivette-Myers) $11,000 more was spent than was received in draws. When these funds were diverted, the contractor was liable for labor, services or materials furnished for the two jobs and these sums remained unpaid in substantial amounts, as much as $71,384 (32%) on Naranja and $145,666 (66%) on Skyhook. The diverted funds appear to have been completely expended during that time interval on other construction projects in which the corporation was engaged. There is no evidence in this record that the debtors individually received any personal benefit directly or indirectly from any part of the diverted funds.

The debtor husband devoted virtually all of his time to the on-site supervision of construction and the debtor wife was engaged in the office on a full-time basis. She was assisted by bookkeepers and a third individual, a corporate vice-president, was authorized to sign checks.

> Section 523(a)(4) excepts from discharge:
> ". . . any debt (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

Plaintiff contends that the debtors' conduct constituted embezzlement or, alternatively, that it constituted a defalcation while acting in a fiduciary capacity.

In support of both contentions, plaintiff points to a provision in the Florida Mechanics' Lien Law, § 713.34(3) Florida Statutes:

> "Any person, firm, corporation or agent, officer or employee thereof who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property, for any other purpose than to pay for labor or services performed on or materials furnished for this specific improvement, while any amount for which he may be or become liable for such labor, services, or materials remains unpaid shall be guilty of embezzlement and shall be prosecuted and, upon conviction, punished in accordance with the provisions of the laws of this state; provided, however, that failure to pay for such labor, services or materials furnished for this specific improvement after receipt of such proceeds shall constitute prima facie evidence of intent to defraud."

■ It is clear, at least in this circuit, that the debtors were not acting in a fiduciary capacity as that term is employed in § 523(a)(4). *Matter of Angelle*, 5 Cir. 1980, 610 F.2d 1335; *In re Clayton*, 9 B.R. 5 (Bk.Ct.S.D.Fla.1980). In *Angelle*, the court held that a building contractor who had misappropriated funds was not a fiduciary within the intent of § 17(a)(4) of the Bankruptcy Act of 1898, notwithstanding a Louisiana statute which made it a criminal offense for a building contractor to divert funds to another project. In doing so, the court expressly declined to follow *In re Romero*, 10th Cir. 1976, 535 F.2d 618, which is relied upon by plaintiff here. Section 523(a)(4) is derived from § 17(a)(4). Although there is an important difference between the two provisions, which will be discussed below, there is no basis to give different effect to the term "fiduciary" in the present statute. Of course, as this court held in *Clayton*, this court must follow *Angelle*. That decision also clearly reflects the weight of authority. *Matter of Dloogoff*, 8 Cir. 1979, 600 F.2d 166; *Collier*

*on Bankruptcy* (15th ed.) § 523.14[c]. It follows that plaintiff has failed to establish that the debtors acted in any fiduciary capacity.

 Section 523(a)(4) clearly provides that debts for embezzlement or larceny are nondischargeable, whether or not they occurred within a fiduciary capacity. This was a conscious departure from the provisions of former § 17(a)(4). *Collier on Bankruptcy* (15th ed.) ¶ 523.14[1][c]. Embezzlement is a criminal act, typically the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful or with the consent of the owner. *Moore v. United States*, 160 U.S. 268, 269–270, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895). The debtors' conduct was subject to the statutory definition of embezzlement contained in § 713.34(3), Florida Statutes, quoted above. It is clear that if there was the requisite intent to defraud, the debtors' conduct in connection with two of the three jobs, Naranja and Skyhook, constituted embezzlement.

The Florida statute provides that the debtors' conduct in this instance constitutes prima facie evidence of intent to defraud. The statute creates a presumption. *Munson v. State*, Fla.App.1964, 165 So.2d 419, 420. It shifts the burden of going forward, but not the burden of proof and its effect is governed by State law. Rules 301, 302, Fed.R.Evid. The prima facie intent is rebuttable. *Mann v. State*, Fla.App.1968, 209 So.2d 472, 474; *Houdaille-Duval-Wright Co. v. Congdon*, Fla.App.1970, 237 So.2d 305, 308. In this instance, the debtors' evidence to rebut the statutory presumption is insufficient.

The debtor wife has disavowed any intent to defraud, but there is no explanation of why or how $52,000 (18%) of the payments received from the county for the Naranja project were diverted to other jobs and $112,000 (33%) of the payments received from the federal government for the Skyhook project were diverted to other jobs.

There is no showing that the payments were diverted inadvertently. The amounts would seem to negate that possibility. Nor is there any evidence that payments were diverted by the payees. In fact, it is admitted that the debtors in each instance specified the account to be credited and that these instructions were followed. Contrary evidence in *Mann* led to the conclusion that the prima facie evidence was rebutted. At pages 473–474. There is, in short, no explanation or excuse for the substantial violation of this statute by the debtors unless complete neglect and inattention are sufficient excuse. I reject that contention.

The fact that the debtor husband, who was the corporate president, entrusted the office to his wife while he supervised the field operation does not relieve him from responsibility under the Florida statute. I cannot believe that the large diversions present here occurred without his knowledge, consent and active participation.

The debtors have also argued that plaintiff's cause of action is barred by § 713.23, Florida Statutes, a statute of limitation, and that § 713.34(3), Florida Statutes, is unconstitutional. The limitation statute has no application to this case. Debtors have alleged that the statute "is so vague that an ordinary person of average intelligence is not given fair warning as to what conduct might transgress the statute" and that it "prohibits constitutionally protected activity as well as activities which are not protected".

In *Mann*, though the issue was not presented and was unnecessary to its decision, the Florida intermediate court volunteered that § 713.34(3):

"... is so vague and indefinite as to times, such as, 'when is a material bill owing,' that it becomes completely impractical, if not impossible for a building contractor to contract for work on more than one house at a time and pay for anything without being in violation of said act."

Despite this strong dicta 13 years ago, the statute remains in effect and presumptively valid.

 I believe that a contractor of ordinary understanding could readily and simply comply with the statute by maintaining a separate ledger for each owner, posting all payments and accruing all charges for labor and materials, making no disbursement other than to those accrued charges until all had been paid or provided for.

In upholding a Tennessee statute which proscribed "crimes against nature", without further amplification, the Supreme Court recently noted that:

> "But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.'... Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.... All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975).

See also *United States v. Maude*, D.C.Cir. 1973, 481 F.2d 1062, 1068.

Debtors have not carried their burden of demonstrating that this statute is invalid.

 28 U.S.C. § 2403(b) requires that whenever the constitutionality of any state statute is drawn in question, the court shall certify that fact to the Attorney General of the State and permit the state to intervene and argue the issue. The debtors have made no effort to assure that this requirement is met. Although I have considered the debtors' contention on its merit, I believe that it was a part of the debtors' burden to assure compliance with the foregoing statute and that this court should not be obliged at final hearing to defer trial or decision pending compliance with this statute. See *State ex rel. Shevin v. Kerwin*, Fla.1973, 279 So.2d 836, 838.

The remaining "affirmative defenses" pleaded by the debtors have not been argued and appear to be without substance.

It follows that the debtors' conduct in diverting funds from the Naranja and Skyhook projects constituted embezzlement and, therefore, are nondischargeable under § 523(a)(4) to the extent that the debt is for that embezzlement. There has been no proof of embezzlement with respect to the Jollivette-Myers project.

Plaintiff moved at trial for continuance as to the issue of damages. (C.P. No. 23). The motion is granted and the trial of this matter is continued to 9:30 a. m. on Thursday, December 3, 1981, in Courtroom 1406, 51 S.W. First Avenue, Miami, Florida, for the sole purpose of determining the amount of the debtors' debt directly resulting from their embezzlement of payments received on the Naranja and the Skyhook projects. As is required by B.R. 921(a), a separate judgment will be entered after that hearing for plaintiff in that sum and will provide that the judgment is nondischargeable under 11 U.S.C. § 523(a)(4). Costs will be taxed on motion.