In re Charles L. **HOFFMAN,**
Jr., Debtor.

**NATIONAL BANK OF COMMERCE
OF PINE BLUFF, Plaintiff,**

v.

**Charles L. HOFFMAN, Jr., Defendant.**

**Bankruptcy No. ED 85–27M.
Adv. No. 85–476M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Sept. 16, 1986.

See also, Bkrtcy., 53 B.R. 564, Bkrtcy., 51 B.R. 42.

Isaac A. Scott, Jr. and Charles T. Coleman, Little Rock, Ark., for debtor/defendant.

Wm. Randal Wright, Hope, Ark., trustee.

Joseph A. Strode, Pine Bluff, Ark., for plaintiff.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

Charles L. Hoffman, Jr., (Hoffman) filed a voluntary petition under the provisions of chapter 7. On September 13, 1985, National Bank of Commerce of Pine Bluff (NBC) filed a pleading styled, "Objection to Discharge and Complaint to Determine Dischargeability of Debt."

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). The Court has jurisdiction to enter a final judgment in this cause.

The complaint alleged that NBC held a lien on all of the farm equipment and crops owned by Craig Shackelford Farms, Inc., (Shackelford Farms), an Arkansas corporation, which was owned fifty percent by Hoffman.

In paragraph 4 of the complaint, NBC alleged that for a period of more than one year prior to the commencement of the case Hoffman caused Shackelford Farms to sell to various third parties farm equipment it owned which was fully encumbered by perfected liens in favor of NBC. The transfers were without authorization of NBC, and Hoffman failed to remit the proceeds to NBC. The complaint alleged that these facts constituted embezzlement and/or willful and malicious injury to prop-

erty of NBC and constituted an exception to discharge under 11 U.S.C. § 523(a)(4) and (6). The complaint also alleged that the above facts constituted a fraudulent transfer of property warranting denial of the entire discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

In paragraph 6 of the complaint, NBC alleged that Hoffman caused Shackelford Farms to sell certain specifically described crops to third parties which were fully encumbered by liens in favor of NBC and that Hoffman failed to remit the proceeds to NBC. The complaint alleged that these facts constituted embezzlement or larceny and/or willful and malicious injury to property sufficient to bar a discharge of NBC's debt under 11 U.S.C. § 523(a)(4) and (6), respectively.

There were other allegations of fact constituting a basis for an objection to discharge under 11 U.S.C. § 727(a)(3) and (5) and 11 U.S.C. § 523(a)(2)(B) which were not proved at the trial. A directed verdict was granted on the allegations. Since no party seriously disputes the directed verdict that was granted as to these sections, this memorandum opinion will not discuss them.

NBC also filed an amended complaint within the time permitted by the Court alleging additional specific transfers of crops within one year of bankruptcy and alleging that the transfers constituted a basis to object to the debtor's general discharge under 11 U.S.C. § 727(a)(2) and the discharge of NBC's debt under 11 U.S.C. § 523(a)(4) and (6).

The facts as developed by the evidence may be stated in condensed form. Hoffman and L. Craig Shackelford, Jr., (Craig Shackelford) own all of the stock in and were responsible for the day-to-day operations of Shackelford Farms. Shackelford Farms operated a large farming operation in southeast Arkansas. Since 1976 Shackelford Farms borrowed substantial sums from NBC to produce their crops and to purchase farm equipment. By 1984 the debt to NBC was several million dollars, and Shackelford Farms was in financial trouble. Also by 1984 NBC held a lien on everything Shackelford Farms owned including crops, crop proceeds and farm equipment. During 1984 and 1985 Shackelford Farms sold crops and did not remit all of the proceeds to NBC. During this same period some farm equipment was sold, and the proceeds were not remitted to NBC. The unremitted proceeds were used by Shackelford Farms to operate the farming business, to service other debts of the farm or to purchase new equipment. There was no evidence that any of the unremitted money was appropriated for purposes other than legitimate farming expenses.

NBC knew that Shackelford Farms was selling crops and unwanted equipment generally and did not object to this practice. Most of the proceeds was remitted to NBC although NBC assumed that *all* of the proceeds from the sale of their collateral was being remitted to them. NBC never gave permission to Shackelford Farms to sell NBC's collateral and to retain the proceeds except in a few specific instances.

For tax considerations, the 1984 crop loan for Shackelford Farms was made to Hoffman and Craig Shackelford, individually, who in turn loaned the money to the corporation. Both men are jointly and severally liable to NBC for the full amount of the debt.

By 1985 the debt to NBC had grown so large that it had become unmanageable. The parties failed to reach an agreement for the financing during the 1985 crop year. As a result, Shackelford Farms filed for relief under chapter 11, and Hoffman filed for relief under chapter 7.

Subsequent to Shackelford Farms filing chapter 11, NBC obtained relief from the automatic stay and proceeded to liquidate the remaining collateral. An unsecured deficiency now exists in the approximate sum of $500,000.00 although the exact amount is in dispute. NBC's evidence, which the Court finds to be the most credible, was that the value of the crop proceeds not remitted exceeded $500,000.00 over the last three years of operation.

Hoffman admitted that the decision to sell NBC's collateral and to convert the proceeds was a joint decision he made with Craig Shackelford. He testified that he did not think his actions were improper at the time of the conversions, that things would somehow work out, and that NBC would be paid along with everyone else.

At the conclusion of the plaintiff's case, a directed verdict was granted in favor of Hoffman concerning allegations in the complaint dealing with 11 U.S.C. § 523(a)(2)(B), (4) and (6), 11 U.S.C. § 727(a)(2)(A), and 11 U.S.C. § 727(a)(3) and (5). The Court incorrectly instructed the parties that the evidence did support a finding of nondischargeability under 11 U.S.C. § 523(a)(2)(A).

At the conclusion of all of the evidence, both sides urged the Court to reconsider its previous ruling in regard to § 523(a)(6), but for different reasons. The Court agreed to reconsider all its rulings, and both parties have filed briefs. After considering the briefs, the cases cited therein, and numerous other cases and authorities, the Court is convinced that the ruling on the Hoffman's motion for directed verdict as to 11 U.S.C. § 523(a)(6) was correct, but not for the reasons stated from the bench. The Court is also convinced that NBC did not establish a basis to deny Hoffman a general discharge under 11 U.S.C. § 727 or a discharge of NBC's debt under 11 U.S.C. § 523(a)(2)(A). A prima facie case was established by NBC pursuant to 11 U.S.C. § 523(a)(4). This memorandum opinion is issued pursuant to Bankruptcy Rule of Procedure 7052 and in lieu of the remarks made in open court.

The complaint alleged legal theories governed by two separate sections of the Bankruptcy Code. 11 U.S.C. § 727(a)(2)(A) provides, in part, as follows:

> The court shall grant the debtor a discharge, unless—
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred ... or has permitted to be transferred ...
> (A) property of the debtor, within one year before the date of the filing of the petition;

11 U.S.C. § 523(a)(2)(A), (4) and (6) provides, in part, as follows:

> (a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
> (A) false pretenses, a false representation, or actual fraud,
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

### 11 U.S.C. § 727(a)(2)

There are fundamental distinctions between 11 U.S.C. § 727 and 11 U.S.C. § 523 and the various subdivisions of each section. Section 727(a)(2) is derived from section 14(c)(4) of the Bankruptcy Act of 1898, as amended. S.Rep. No. 989, 95th Cong., 2nd Sess. 98, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5884; H.R.Rep. No. 595, 95th Cong., 1st Sess. 384, *reprinted in*, 1978 U.S.Code Cong. & Ad.News 5963, 6340; 4 *Collier on Bankruptcy* ¶ 727.02[1][a] (15th ed. 1985). Cases construing this section of the Act concluded that a transfer warranting a denial of discharge must be an actual "transfer of valuable property belonging to the bankrupt which reduced the assets available to creditors and which was made with fraudulent intent." 1A *Collier on Bankruptcy* ¶ 14.49 (14th ed. 1971). [footnotes omitted]. Property which is encumbered 100% in value by a lien of a creditor and which is transferred by a debtor within one year of bankruptcy, is not a transfer of a valuable piece of the debtor's property which reduces the assets available to pay creditors. This type transfer does not violate section 14(c)(4). The value of the estate's interest in fully mortgaged property is zero although the estate does hold legal

title which is property of the estate under 11 U.S.C. § 541(a)(1). *5 Collier on Bankruptcy* ¶ 541.06 (15th ed. 1986). Since fully encumbered property has no equity which would be distributed to unsecured creditors, the property transferred by the debtor cannot be a basis for a denial of the general discharge under 11 U.S.C. § 727(a)(2). *In re Harris,* 8 B.R. 88, 91 (Bkrtcy.M.D.Tenn.1980); *In re Ellefson,* 54 B.R. 16, 17 (Bkrtcy.W.D.Wis.1985). Furthermore, the property which was transferred by Hoffman was not property of the estate of Hoffman; it was the property of Shackelford Farms, Inc.

### 11 U.S.C. § 523(a)(2)(A)

■ The facts here do not constitute a violation of 11 U.S.C. § 523(a)(2)(A) as originally indicated by the Court because the debt to NBC was not obtained by any fraud. The fraudulent conversion occurred long after the time the loan was obtained and the debt was incurred. The fraud committed was the sale of mortgaged property and the retention and misappropriation of the sale proceeds. There are no reported cases construing a conversion to be a violation of 11 U.S.C. § 523(a)(2). Furthermore, NBC's complaint did not allege a violation of 11 U.S.C. § 523(a)(2). NBC's debt cannot be found nondischargeable under this section.

### 11 U.S.C. § 523(a)(6)

Under the Bankruptcy Act, creditors whose collateral was disposed of by a debtor and the proceeds converted sought relief under section 17(a)(2). *In re Harris,* 8 B.R. at 88; 1A *Collier on Bankruptcy* ¶ 17.17[1] (14th ed. 1971). Section 17(a)(2) provided in part that a discharge in bankruptcy releases a bankrupt from all of his provable debts except for certain liabilities including liabilities for willful and malicious conversion of the property of another. The specific reference to willful and malicious *conversion* as a bar to discharge of a particular debt was not retained in the new Bankruptcy Code per se, but the concept is said to be subsumed in the language of 11

U.S.C. § 523(a)(6). *In re Long,* 774 F.2d 875, 879 (8th Cir.1985); *In re Egan,* 52 B.R. 501, 505 (Bkrtcy.D.Minn.1985); *In re Harris,* 8 B.R. at 93; *In re Bridges,* 51 B.R. 85, 89 (Bkrtcy.W.D.Ky.1985); *In re Todd,* 34 B.R. 633, 637 (Bkrtcy.W.D.Ky.1983); *In re Cline,* 52 B.R. 301, 304 (Bkrtcy.W.D.Ky. 1985); *In re Nash,* 55 B.R. 5, 7 (Bkrtcy.W. D.Wis.1985); 3 *Collier on Bankruptcy* ¶ 523.16 (15th ed. 1986).

Since it is undisputed that Hoffman's conduct was intentional, the only issue raised under § 523(a)(6) is whether his conduct was malicious.

■ The two leading cases construing section 17(a)(2) of the Bankruptcy Act are *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) and *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). *Tinker v. Colwell* held that section 17(a)(2) was violated by "a willful disregard of what one knows to be his moral duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally." *Davis v. Aetna Acceptance Co.,* construed this same section to mean that absent aggravated features, a conversion of property was not enough in itself to prevent a discharge of a debt.

The legislative history of 11 U.S.C. § 523(a)(6) suggests that Congress intended to overrule *Tinker v. Colwell* to the extent that the lesser standard consisting of a reckless disregard of creditors' rights could bar a discharge. *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986); *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1009 (4th Cir.1985); *In re Long,* 774 F.2d at 875; *Matter of Lewis,* 17 B.R. 46, 48 (Bkrtcy.W.D.Ark.1981); S.Rep. No. 989, 95th Cong. 2nd Sess. 79, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5865.

In *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d at 1009, the court commented: "Congress' reference to *Tinker* has fueled the disagreement among the courts alluded to earlier. Some courts, such as the one in *In re Hodges,* [4 B.R. 513 (Bkrtcy.W.D.Va.1980)] have thought that Congress meant to overrule *Tinker's*

holding concerning malice as well as willfulness and have held that specific malice is now required under section 523(a)(6). Others such as those in *In re Fussell* [15 B.R. 1016 (W.D.Va.1981)] and *United Bank of Southgate* [*v. Nelson,* 35 B.R. 766 (N.D.Ill.1983), *on remand,* 35 B.R. 765 (Bkrtcy.N.D.Ill.1983) ] have held that, because Congress only explicitly referred to the 'willful' prong of the *Tinker* holding, the malice prong is intact and no showing of specific malice is required."

Both the Fourth Circuit in *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d at 1003, and the Ninth Circuit in *In re Cecchini,* 780 F.2d at 1440, concluded that § 523(a)(6) did not require a showing of specific malice. This interpretation has been followed by numerous other courts which concluded that a debtor's willful conversion which necessarily resulted in harm to the creditor, rendered the creditor's debt nondischargeable and that the malice requirement was satisfied without further proof of specific malice. *In re Clark,* 50 B.R. 122, 126 (Bkrtcy.D.N.D.1985); *In re Nelson,* 35 B.R. 765 (Bkrtcy.N.D.Ill.1983); *In re Krause,* 44 B.R. 159, 163 (Bkrtcy.N.D.Ill.1984); *In re Obermeyer,* 12 B.R. 26, 27 (Bkrtcy.N.D.Ohio 1981); *Matter of Emporelli,* 44 B.R. 124, 127 (Bkrtcy.W.D.Pa.1984); *In re Rebhan,* 45 B.R. 609, 612 (Bkrtcy.S.D.Fla.1985); *In re Smith,* 56 B.R. 699, 700 (Bkrtcy.E.D.Pa.1986); *In re Gantt,* 56 B.R. 852, 857 (Bkrtcy.E.D.Va.1985); *In re Nash,* 55 B.R. 5, 7 (Bkrtcy.W.D.Wis.1985); *In re Haynes,* 54 B.R. 20, 21 (Bkrtcy.W.D.Wis.1985).

Despite this Court's inclination to follow the above-cited cases, the facts in this case are generally indistinguishable from the facts in the case of *In re Long,* 774 F.2d at 875. This Court is bound by the Eighth Circuit's interpretation of section 523(a)(6) that "willful" and "malicious" are separate elements. *In re Long* defined willful and malicious conversion sufficient to bar a discharge of a particular debt as follows:

> When transfers in breach of security agreements are in issue, we believe nondischargeability turns on whether the

conduct is (1) headstrong and knowing ("willful") and, (2) targeted at the creditor ("malicious"), at least in the sense that the conduct is certain or almost certain to cause financial harm.

*In re Long,* 774 F.2d at 881.

The Eighth Circuit concluded that Long was not guilty of conduct warranting a denial of the discharge of the creditor's debt pursuant to section 523(a)(6) for committing almost identical acts as Hoffman. Consistent with *In re Long,* there is insufficient evidence of malice targeted at NBC to warrant a denial of discharge of the NBC debt. Hoffman was trying to keep the farming operation of Shackelford Farms from failing. The proceeds from the sale of NBC's collateral were used to pay normal operating expenses of Shackelford Farms just as the proceeds in *In re Long* were used. Hoffman was hopeful that the operation would continue and worked diligently with NBC to reach an agreement for a loan for the 1985 crop year. Hoffman intentionally sold NBC's collateral but NBC failed to establish that he sold the mortgaged property and maliciously converted the proceeds. In light of the factually indistinguishable case of *In re Long,* Hoffman's debt to NBC cannot be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### *11 U.S.C. § 523(a)(4)*

NBC alleged larceny and embezzlement under 11 U.S.C. § 523(a)(4) as additional grounds to deny the discharge of the debt owed it by Hoffman. The offense of larceny requires a wrongful taking of property from the owner. The felonious intent must have existed at the time of the original taking. 3 *Collier on Bankruptcy* ¶ 523.14[3] (15th ed. 1981). NBC did not present facts sufficient to find Hoffman committed larceny since the proof was that Hoffman lawfully retained possession of NBC's collateral.

For purposes of defining embezzlement as contained in 11 U.S.C. § 523(a)(4), there is a split of authority on determining whether to apply a federal or a state law

definition. *In re Snellgrove,* 15 B.R. 149, 151 (Bkrtcy.S.D.Fla.1981) (applied Florida embezzlement statute to determine whether § 523(a)(4) embezzlement occurred); *Matter of Long,* 35 B.R. 949, 953 (Bkrtcy.S. D.Ohio 1983) (Ohio state statutory embezzlement definition used to determine dischargeability under § 523(a)(4)); *In re Shinew,* 33 B.R. 588, 592 (Bkrtcy.N.D.Ohio 1983) (earlier admission of conviction of grand theft under Ohio Revised Code § 2913.02 constituted an admission of nondischargeable conduct for purposes of 11 U.S.C. § 523(a)(4); *In re Sutton,* 39 B.R. 390, 395 (Bkrtcy.M.D.Tenn.1984) (applied federal law definition of embezzlement for debt discharge purposes, but noted that state law definition was substantially the same); *In re James,* 42 B.R. 265, 266 (Bkrtcy.W.D.Ky.1984) (discharge definitions are not questions of state law but are to be decided under applicable federal standards); *In re Carlton,* 26 B.R. 202, 205 (Bkrtcy.M.D.Tenn.1982) (under either federal law or Tennessee state law, debtor found guilty of embezzlement); *Matter of Shuler,* 21 B.R. 643, 644 (Bkrtcy.D.Idaho 1982) (reasoned that for purposes of 11 U.S.C. § 523(a)(4), the definition of embezzlement was the same). *In re Schultz,* 46 B.R. 880, 892 (Bkrtcy.D.Nev.1985) is instructive and persuasive on this point.

Exceptions to discharge are a matter of federal bankruptcy law; state law may be consulted only to the extent that it is not in conflict with the Congressional policy of providing a fresh start to the honest debtor. Since dischargeability is a matter to be determined by federal law, the violation of a state statute is relevant only where the state and federal definitions and standards of liability and proof are the same.

▪ Quoting the Supreme Court in *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895), the case of *In re Sutton,* 39 B.R. at 395 recites the federal definition of embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Sutton* goes further

and requires a showing of fraud in fact involving moral turpitude or an intentional wrong or deceit. 39 B.R. at 395; *See also United States Life Title Ins. Co. v. Dohm,* 19 B.R. 134, 138 (N.D.Ill.1982); *In re James,* 42 B.R. at 267; *In re Epperson,* 45 B.R. 708 (Bkrtcy.E.D.Tenn.1985). The crime of embezzlement must be proven by clear and convincing evidence. *In re Sutton,* 39 B.R. at 395. Embezzlement has been succinctly defined as requiring three necessary elements: (1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which the property was entrusted; and (3) circumstances indicating fraud. *In re Schultz,* 46 B.R. at 889.

Under Arkansas law, the crimes of embezzlement, conversion and larceny, and similar common law and statutory offenses relating to misappropriation of property or services have been consolidated into a single offense of theft. Ark.Stat.Ann. § 41–2202(1) (Repl.1977).

A theft of property is committed if a person:

  (a) knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof; or

  (b) knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.

Ark.Stat.Ann. § 41–2203 (Repl.1977).

The Arkansas statutory offense of theft is not inconsistent with the federal definition of embezzlement. In an attempt to determine whether Hoffman embezzled the property pledged to NBC or the proceeds from the property, both definitions require a discussion of and focus on the facts surrounding the sale and appropriation of sale proceeds.

▪ NBC contends that Hoffman embezzled the proceeds of the sale of property pledged as security to NBC. The security agreement between the parties prohibits

Hoffman from selling encumbered property without the written consent of NBC. However, NBC's representative testified at the trial that he was generally aware of the practice of farmers to sell encumbered farm equipment and crops without written authorization as technically required by their security agreements. NBC assumed, however, that the proceeds of any sale would be remitted to NBC unless different arrangements were made. Hoffman, on behalf of Shackelford Farms was at all times in lawful possession of equipment, crops, and all security of NBC. It is undisputed that Hoffman wrongfully misapplied the proceeds to a use other than repayment of the debt to NBC.

The only remaining element for finding an embezzlement by Hoffman is to examine the scienter or intent of the converter, Hoffman. Courts applying the federal definition of embezzlement to § 523(a)(4) have attempted to outline conduct indicating a fraudulent intent by requiring a showing of moral turpitude or an attempt to harm the secured creditor. This type intent is something less than the malicious intent requirement for conversion under 11 U.S.C. § 523(a)(6) since Congress chose to create an exception to discharge for embezzlement without the additional requirement of proof of malice.[1]

■ The following facts establish that NBC met its burden on direct examination and made a prima facie case of embezzlement by Hoffman. First, Hoffman is an experienced attorney. Hoffman must have known that a failure to remit to NBC sale proceeds from NBC's collateral would put the money beyond the reach of this creditor. *See In re Rebham*, 45 B.R. at 614 (debtor had an affirmative duty under the trust and security agreement to pay proceeds of creditor's collateral to creditor, and debtor's intent to deprive creditor of proceeds is inferable from facts and circumstances of the appropriation). Although the proof establishes tacit permis-

sion to Hoffman to sell the collateral, Hoffman should have known at all times that NBC expected to receive and that NBC thought they were receiving all of the proceeds. Hoffman requested and was granted permission from NBC to sell some specific equipment. During the negotiations for the aborted 1985 crop loan, Hoffman failed to disclose to the bank officer, who was his friend, that other substantial amounts of the bank's collateral was being and had been sold and the proceeds spent. This is evidence of intentional deception and fraud. The failure of NBC to strictly adhere to the sale procedures of the security agreement did not relieve the debtor of his duty to remit sale proceeds to NBC. *In re Freeman*, 30 B.R. 704, 708 (Bkrtcy.W.D. La.1983).

■ Second, unlike the decision of *In re Long*, 774 F.2d at 875, interpreting 11 U.S.C. § 523(a)(6), Hoffman's use of the proceeds for business debts and continued farm operations is no defense to proof of embezzlement under 11 U.S.C. § 523(a)(4). By taking possession and using the proceeds of NBC's collateral, Hoffman exercised the requisite "dominion over the property in violation of the rights of the owner entitled to possession" to constitute conversion of the proceeds. *Auston v. Loyd*, 533 F.Supp. 737, 740 (W.D.Ark.1982), *aff'd*, 691 F.2d 503 (8th Cir.1982) quoting *Thomas v. Westbrook*, 206 Ark. 841, 177 S.W.2d 931 (1944). The offense of embezzlement requires only proof of a wrongful taking and deprivation from the rightful owner. *United States v. Moseley*, 507 F.2d 257 (8th Cir.1974), *reh'g denied*, 507 F.2d 257 (8th Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1426, 43 L.Ed.2d 672 (1975); *Hawkins v. United States*, 458 F.2d 1153, 1155 (5th Cir.1972) (wrongfully depriving owner of his property whether or not it is sold constitutes the offense of conversion).

■ Third, if Hoffman's intent was to repay NBC from future profits from the continued operation of the farm it is no

---

**1.** *See* 29A C.J.S. *Embezzlement* § 11(a) and (b) which discuss acts constituting conversion and which establish that although an act of embez-

zlement is necessarily a fraudulent conversion, a conversion may cover many acts, other than embezzlement.

defense to the offense of embezzlement. *Camp v. State*, 249 Ark. 1075, 467 S.W.2d 707, 710 (1971), *rev'd on other grounds*, 404 U.S. 69, 92 S.Ct. 307, 30 L.Ed.2d 223 (1971). NBC had a property right in the exact dollars Hoffman received from the sale of the mortgaged property and was not obliged to be paid from any other source. "The fact that the intent is to deprive the rightful owner of funds only temporarily and not permanently, as is often the situation in cases such as [*In re*] *Drake* [5 B.R. 149 (Bkrtcy.D.Idaho 1980)] and the present action, does not eliminate the element of intent. For example, in the context of criminal embezzlement, the intention to restore the property is neither a defense to nor negation of the embezzlement. The embezzlement has occurred and the intent to later restore may only be considered in mitigation of punishment. I conclude the same analysis applies in the civil context." *Matter of Shuler*, 21 B.R. at 644.

There is substantial authority to support a finding that NBC met its burden as to the commission of an embezzlement by Hoffman under 11 U.S.C. § 523(a)(4). *Matter of Shuler*, 20 B.R. 163 (Bkrtcy.D.Idaho 1982), *reh'g denied*, 21 B.R. 643 (Bkrtcy.D.Idaho 1982) (debtor's use of proceeds of sale of consigned property constituted embezzlement); *Matter of Long*, 35 B.R. at 949 (embezzlement found where grain elevator operator exercised control over and sold owner's grain without paying owner); *In re James*, 42 B.R. at 265 (embezzlement found where debtor agreed to repay loan out of certain commission and converted commission); *In re Rebhan*, 45 B.R. at 609 (debtor's failure to segregate and remit car sales proceeds to floor plan financier who held security interest in both new cars and proceeds of sale of cars constituted embezzlement); *In re Freeman*, 30 B.R. at 704 (debtor embezzled over $62,000.00 where debtor used sale proceeds of creditor's collateral to pay other business creditors, to make payroll and to pay salaries to himself and to his son).

At the close of NBC's case, the Court directed a verdict in favor of Hoffman regarding allegations of embezzlement under 11 U.S.C. § 523(a)(4). Since the verdict was directed in error, the record will be reopened and a trial date scheduled to allow Hoffman to present any additional evidence on issues which could be raised as a defense under 11 U.S.C. § 523(a)(4). NBC will then be allowed to present rebuttal testimony. At the conclusion of this additional testimony, the Court will enter its final judgment. Trial will be set by subsequent notice.

IT IS SO ORDERED.